IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:20-cv-00254-MR

| | |
|---|---|
| JOHNNY EDWARD CRAWFORD, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> KILOLO KIJAKAZI,[1] Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 12], the Defendant's Motion for Summary Judgment [Doc. 14], and the Plaintiff's Motion to Remand [Doc. 17].

**I.  BACKGROUND**

On October 12, 2017, the Plaintiff, Johnny Edward Crawford ("Plaintiff"), filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of October 24, 2016. [Transcript ("T") at 58-59]. The Plaintiff's

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021 and is therefore substituted in this action as the named defendant. See Fed. R. Civ. P. 25(d).

claims were initially denied on January 8, 2018, [id. at 89], and again denied upon reconsideration on July 26, 2018, [id. at 100]. On the Plaintiff's request, a hearing was held on August 29, 2019 before an Administrative Law Judge ("ALJ"). [Id. at 13]. On September 20, 2019, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 13-22].

On July 14, 2020, the Appeals Council denied the Plaintiff's request for review thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 1]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

On July 22, 2021, the Plaintiff also filed a Motion to Remand requesting that this case be remanded for a new hearing in front of a new ALJ because the Commissioner was unconstitutionally protected from presidential removal at the time the Plaintiff was denied disability insurance benefits. [Doc. 17; Doc. 18].[2] The Plaintiff further requested an Order staying all proceedings for a period of thirty days to provide an opportunity for the parties to brief the constitutional issue raised in the Motion to Remand. [Doc. 17 at 2; Doc. 18 at 3].

---

[2] The Plaintiff cited the Supreme Court's decisions in Collins v. Yellen, 141 S. Ct. 1761 (2021); Selia L. LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183 (2020); and Lucia v. SEC, 138 S. Ct. 2044 (2018) as support for his Motion to Remand. [Doc. 17; Doc. 18].

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, (2019) (internal quotation marks omitted); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal

quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanation." Mills v. Berryhill, No. 1:16-cv-00025-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

**III. THE SEQUENTIAL EVALUATION PROCESS**

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

4

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or

work experience.  Id.  If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC").  The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions.  Social Security Ruling 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work.  20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635.  If the claimant can still perform his or her past work, then the claimant is not disabled.  Id.  Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner.  At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy.  Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006).  "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."  20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635.  If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the

application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since October 24, 2016, the Plaintiff's alleged onset date. [T. at 15]. At step two, the ALJ found that the Plaintiff has the following severe impairment: "degenerative disc disease of the lumbar spine." [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 17]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except he requires the opportunity to alternate sitting and standing approximately every 30 minutes with less than 10% time off task during change of position. He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. He can have frequent exposure to workplace hazards.

[Id.].

At step four, the ALJ identified the Plaintiff's past relevant work as material handler and forklift operator. [Id. at 20]. The ALJ determined, however, that the Plaintiff "is unable to perform past relevant work as actually

7

or generally performed." [Id.]. At step five, the ALJ concluded that based on the Plaintiff's age, education, work experience, and RFC, the Plaintiff is able to perform other jobs existing in significant numbers in the national economy, including small parts assembler, nut and bolt assembler, and agricultural sorter. [Id. at 21]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Act from October 24, 2016, the alleged onset date, through September 20, 2019, the date of the ALJ's decision. [Id. at 22].

## V. DISCUSSION[3]

### A. The Motion to Remand

The Plaintiff argues that his case should be remanded for a new hearing in front of a new ALJ because, at the time the Plaintiff was denied benefits, the Commissioner was only removable upon a finding "of neglect or malfeasance in office."[4] 42 U.S.C. § 902(a)(3); [See Docs. 17, 18]. According to the Plaintiff, such restrictions on the President's ability to

---

[3] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

[4] "An individual serving in the office of Commissioner [of the Social Security Administration] may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3).

8

remove the Commissioner violated constitutional separation of powers. [See Docs. 17, 18].

Under Article II of the Constitution, the President retains the power to remove the heads of executive agencies. Seila L. LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183, 2191 (2020). Generally, a statutory provision that restricts the President's ability to remove the head of a particular agency is unconstitutional.[5] Collins v. Yellen, 141 S. Ct. 1761, 1786-87 (2021). The presence of an unconstitutional removal restriction, however, does not void the *authority* held by the head of an agency or her subordinate executive officers—in this case the Social Security Administration's ALJs. Id. at 1787-88 & n.23. Where executive officers have been *constitutionally appointed*,[6] their authority to issue binding judgments is valid, regardless of any removal restriction. Id. As such, a plaintiff seeking relief from a judgment issued by a constitutionally appointed executive officer based upon the presence of an unlawful removal restriction must *trace the harm* of which he complains to

---

[5] The Supreme Court has "recognized only two exceptions to the President's unrestricted removal power," none of which are before the Court in this matter. Seila, 140 S. Ct. at 2192 (citing Humphrey's Ex'r v. United States, 295 U.S. 602 (1935); United States v. Perkins, 116 U.S. 483 (1886); Morrison v. Olson, 487 U.S. 654 (1988)).

[6] The Appointments Clause of Article II "prescribes the exclusive means of appointing [executive] '[o]fficers.'" Lucia v. SEC, 138 S. Ct. 2044, 2051 (2018). Under such Clause, "[o]nly the President, a court of law, or a head of department can" appoint executive officers. Id. (citing U.S. Const. art. II, § 2, cl. 2).

the removal restriction itself. Id. at 1789; see also Calcutt v. Fed. Deposit Ins. Corp., 37 F.4th 293, 316 (6th Cir. 2022) ("Collins thus provides a clear instruction: To invalidate an agency action due to a removal violation, that constitutional infirmity must 'cause harm' to the challenging party." (quoting Collins, 141 S. Ct. at 1789)); accord Kaufmann v. Kijakazi, 32 F.4th 843, 849 (9th Cir. 2022); Bhatti v. Fed. Housing Fin. Agency, 15 F.4th 848, 854 (8th Cir. 2021).

On July 16, 2018, the former Acting Commissioner of the Social Security Administration ("SSA"), Nancy Berryhill, "pre-emptively 'address[ed] any Appointments Clause questions involving Social Security claims' by 'ratif[ying] the appointments' of all SSA ALJs and 'approv[ing] those appointments as her own.'" Carr v. Saul, 141 S. Ct. 1352, 1357 (2021) (citation omitted). This ratification cured all potential Appointments Clause challenges related to SSA disability decisions handed down after that date, including the Plaintiff's. See Probst v. Saul, 980 F.3d 1015, 1024-25 (4th Cir. 2020). Accordingly, the Plaintiff cannot obtain relief from the denial of benefits unless he demonstrates that the restriction upon the President's ability to remove the Commissioner affected the ALJ's denial of benefits or the Appeals Council's denial of his request for review. See Collins, 141 S. Ct. at 1789.

The Plaintiff has not established such a causal connection. Instead, the Plaintiff states only that "to keep in office in violation of the Constitution of the United States, the head of an agency who had so much power over the adjudication of the claim of this Plaintiff, requires relief for this Plaintiff." [Doc. 18 at 2]. This assertion, however, does not connect the denial of disability benefits to the Commissioner's insulation from removal. See Collins, 141 S. Ct. at 1789 (providing examples of where a removal restriction may cause a plaintiff harm, such as if the President attempted to remove the agency's head but was unable to do so based upon the restriction). There are no allegations, for example, that the President sought to remove the Commissioner during the pendency of the Plaintiff's disability claim but was unable to do so, or even dissuaded from doing so, based on the removal restriction in 42 U.S.C. § 902(a)(3). See id. Moreover, the Plaintiff makes no allegation that the Commissioner's insulation from removal affected how the ALJ or Appeals Council adjudicated the Plaintiff's disability claim. See Kaufmann, 32 F.4th at 850 ("Claimant does not assert, for example, that . . . the Commissioner directed the Appeals Council to decide her case in a particular way because of the statutory limits on the President's removal authority."). As such, the Plaintiff has failed to trace his denial of benefits to

11

Case 1:20-cv-00254-MR   Document 22   Filed 09/26/22   Page 11 of 18

the removal restriction of which he complains.[7]  Therefore, the Motion to Remand is denied.

B.  **The Motions for Summary Judgment**

As his sole assignment of error, the Plaintiff asserts that "[t]he ALJ below failed to provide in her adverse decision an accurate and logical bridge between the evidence presented and the conclusion that the [Plaintiff's] testified limitations are not supported."  [Doc. 13 at 9].

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity.  The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[8]  SSR 96-8p; see also Mascio, 780 F.3d at 636 (finding that remand may be appropriate where an

---

[7] Because the Plaintiff has not traced his denial of benefits to the removal restriction in 42 U.S.C. § 902(a)(3), as required by Collins, the Court need not decide whether § 902(a)(3) violates separation of powers.  141 S. Ct. 1789.  The Court recognizes, however, that the U.S. Court of Appeals for the Ninth Circuit has held that such provision "violates separation of powers principles."  Kaufmann, 32 F.4th at 849.

[8] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing, or other senses, and impairment(s) which impose environmental restrictions."  20 C.F.R. § 416.945.

12

Case 1:20-cv-00254-MR   Document 22   Filed 09/26/22   Page 12 of 18

ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

The RFC represents "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for determining a claimant's RFC, id. § 404.1546(c), based on "all the relevant evidence in the [claimant's] case record." Id. § 404.1545(a)(1). In forming the RFC, the ALJ "must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (brackets, emphasis, and internal quotation marks omitted); see also Monroe, 826 F.3d at 189. An ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Mascio, 780 F.3d at 636 (citing SSR 96-8p).

Regarding the Plaintiff's testimony, the ALJ stated that:

> At the hearing, the claimant alleged that he is disabled due to back pain. The claimant testified that he feels aching and stabbing pains in his back, along with spasms. The claimant alleged that his back pain limits him to standing no longer than 20 minutes at one time. He further alleged that he could walk no more than 20 to 25 minutes before taking a 15-minute break. The claimant also reported that he has

difficulty squatting, bending, and lifting over 10 pounds. He testified that he takes a muscle relaxer daily and receives back injections every two months to try to alleviate his pain.

[T. at 18]. However, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." [Id.].

The ALJ then cited various evidence from the record, stating that:

> Regarding the claimant's degenerative disc disease, the record shows that the claimant's lumbar spine had reduced range of motion, spasm, and tenderness to palpitation upon exam (3F/4, 10; 4F/10). Examination findings show the claimant had a positive straight leg raise on the right and an antalgic gait (1F/17; 4F/2). Treatment notes further indicate the claimant could squat one-third of normal depth (4F/10). Medical imaging of the lumbar spine revealed mild degenerative disk disease and disc protrusion, with evidence of a prior right laminotomy (6F/1, 2).
>
> However, the claimant's other physical exams consistently showed that he had normal extremity range of motion, coordination, sensations, 5/5 motor strength, and reflexes (1F/2, 3F/15, 5F/95; 7F/50, 113; 9F/3; 14F/7, 59). He also consistently had a normal gait without the use of an assistive device and at times had normal range of motion in his lumbar spine without tenderness to palpation (1F/3, 17; 3F/15; 7F/50, 113; 9F/3; 14F/7, 59). Additionally, on some examinations during the relevant period, the claimant had negative straight leg tests bilaterally (3F/15). Treatment notes further indicated the

14

> claimant could heel/toe walk and balance on each leg individually (4F/10). The medical records show[] that the claimant underwent a lumbar laminotomy in September 2014 (2F/9); however, the undersigned notes that the claimant received only conservative care for his degenerative disc disease following this surgery and the treatment notes did not reveal any plan for more aggressive or alternative treatment modalities.

[Id. at 18-19].

Here, the ALJ did nothing more than recite evidence from the record that appears to both support and contradict a finding of disability. The ALJ never reconciled this disparate evidence or explained how this evidence supports her conclusion in the RFC that the Plaintiff requires no limitation in lifting, can "alternate sitting and standing approximately every 30 minutes," and can "occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl." [Id. at 17].

The ALJ also noted that the Plaintiff "testified that he is able to mow his lawn, grocery shop, and drive independently." [Id. at 19]. The Plaintiff testified that he can grocery shop for items *under 10 pounds*, [id. at 49-50], mow his "small yard" for *45 minutes with a 15-minute break* during that period, [id. at 49], and drive for *30 or 40 minutes with at least one break* during that period, [id. at 41]. The ALJ again failed to explain how these activities are inconsistent with the Plaintiff's testimony that he can stand no

15

longer than 20 minutes, walk no longer than 20 to 25 minutes before taking a break, and lift no more than 10 pounds without difficulty. Instead, the ALJ concluded that the Plaintiff requires *no limitation in lifting* and can "alternate sitting and standing approximately *every 30 minutes*." [Id. at 17] (emphasis added). However, the ALJ failed to cite to any evidence or medical opinion in the record that supports those conclusions. Accordingly, the Court is left to speculate as to how the ALJ reached her ultimate conclusions in the RFC.

The ALJ's decision "is sorely lacking in the analysis" necessary for the Court to meaningfully review the ALJ's conclusions. Mascio, 780 F.3d at 636-37. While the ALJ recited certain evidence in the record, "it is not sufficient for an ALJ to simply recite *what* the evidence is." Mills, 2017 WL 957542, at *4. Instead, an RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio, 780 F.3d at 636 (quoting SSR 96-8p).

A "reviewing court cannot be left to guess as to how the ALJ arrived at [her] conclusions." Mills, 2017 WL 957542, at *4. As such, this matter must be remanded because the ALJ failed to "build an accurate and logical bridge from the evidence to [her] conclusion." Monroe, 826 F.3d at 189.

16

Case 1:20-cv-00254-MR    Document 22    Filed 09/26/22    Page 16 of 18

## VI. CONCLUSION

Because this Court lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. On remand, the ALJ's decision should include a narrative discussion of the evidence (both supportive and contradictory), as required by SSR 96-8p, explaining how she reconciled that evidence to her conclusions.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion to Remand [Doc. 17] is **DENIED.**

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 12] is **GRANTED,** and the Defendant's Motion for Summary Judgment [Doc. 14] is **DENIED.** Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 25, 2022

Martin Reidinger
Chief United States District Judge